| STATE OF SOUTH DAKOTA | ) | IN CIRCUIT COURT |
| COUNTY OF LINCOLN | :ss ) | SECOND JUDICIAL CIRCUIT |

WILLARD HURLEY,

      Plaintiff,

vs.

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY and STATE
FARM FIRE AND CASUALTY COMPANY,

      Defendants.

CIV. #10-772

**AMENDED COMPLAINT AND
DEMAND FOR JURY TRIAL**

COMES NOW the Plaintiff, Willard Hurley, by and through his attorney of record, and for his Complaint against Defendants State Farm Mutual Automobile Insurance Company and State Farm Fire and Casualty Company, does hereby state and allege as follows:

## NATURE OF THE ACTION

This is a bad faith action brought by Willard Hurley (hereinafter "Plaintiff") against State Farm Mutual Automobile Insurance Company and State Farm Fire and Casualty Company (hereinafter "Defendants"). Plaintiff was severely and permanently injured in an automobile accident. He exhausted the minimal limits available on the policies of the tortfeasor and vehicle responsible for the accident, and was denied underinsurance coverage available to him as an insured under his auto and umbrella policies with the Defendants. He was forced to institute litigation to recover those benefits. The Plaintiff has brought this action to recover against the Defendants for their bad faith in handling his claim.

## PARTIES

1.

Plaintiff is a citizen of the State of South Dakota and resident of Lincoln County.

2.

Upon information and belief, Defendants are companies within the State Farm corporation duly organized and existing under the laws of the State of Illinois, with a principal place of business located at One State Farm Plaza, Bloomington, Illinois 61710, which at all relevant times was duly authorized to issue insurance policies in the State of South Dakota.

## JURISDICTION AND VENUE

3.

This Honorable Court has jurisdiction over this action pursuant to S.D. Const. Art. § 5 and SDCL § 16-6-9.

4.

Venue is proper within the indicated judicial circuit under SDCL § 15-5-6.

## FACTS

5.

Defendants provided auto coverage and umbrella coverage to the Plaintiff pursuant to insurance polices issued as Auto Policy Number 12 6659-E20-41B and Umbrella Policy Number 41-11-5040-2 ("the Policies"). *See* Exhibit A (auto policy) and Exhibit B (umbrella policy). The Policies were fully paid, effective, and in force during the relevant dates in this matter.

6.

The Plaintiff was an insured under the Policies, which provided underinsurance coverage up to a limit of Two Hundred and Fifty Thousand ($250,000) per person Five Hundred Thousand Dollars ($500,000) per accident, and umbrella coverage up to a limit of Five Million Dollars ($5,000,000). *See* Exhibits A and B.

2

7.

On October 21, 2007, while the Policies were in force, the Plaintiff was severely and permanently injured in an automobile accident. The accident and the Plaintiff's resulting injuries and other damages were the fault of Sarah Kruse. Kruse subsequently pled guilty to a citation filed against her as a result of the accident.

8.

The tortfeasor and the vehicle that she was driving were underinsured. Kruse had personal liability insurance limits of only $100,000. These policy limits were substantially less than any amount reasonably necessary to compensate the Plaintiff for his injuries and other damages sustained in the accident.

9.

The limits of Kruse's policy were promptly tendered to Plaintiff. Pursuant to the procedure detailed in *Schmidt v. Clothier*, 338 N.W.2d 356 (Minn. 1983), Defendants were placed on notice of the tender of limits and were offered the opportunity substitute their own draft. Plaintiff informed Defendants that it would allow a credit in the amount of the settlement against any liability which might be found to exist in further proceedings against Kruse or against Defendants directly on UIM coverage. Defendants declined and waived the opportunity to substitute their draft or object to the settlement.

10.

On or about June 26, 2009, the Plaintiff accepted the limits on the Kruse policy covering the tortfeasor and her vehicle and entered into a Release. *See* Exhibit C.

3

11.

Plaintiff thereafter sought recovery of UIM benefits from Defendants for Plaintiff's uncompensated damages, in accordance with the terms of the Policies, and Defendants refused to pay the same.

12.

On July 28, 2009, Defendants notified Plaintiff that his claim for UIM benefits had been denied and that it was Defendants' contention that Plaintiff had "been fully compensated for the injury that he received." *See* Ex. D.

13.

Plaintiff was forced to initiate litigation in order to recover his UIM benefits from Defendants.

14.

After approximately one year of litigation, Defendants made an unconditional payment of $340,000 in UIM benefits to Plaintiff.

15.

Defendants then paid an additional $200,000 to resolve the UIM case.

16.

This resulted in a total payment of $640,000 to Plaintiff for his injuries.

17.

Plaintiff was forced to incur $180,000 in attorney's fees and incur mental and emotional distress as well as out of pocket expenses in pursuing his UIM case.

4

## COUNT ONE

### 18.

Plaintiff hereby realleges paragraphs 1-17 and all previous paragraphs and incorporates them as though fully set forth herein.

### 19.

Because the policies constituted a contract of insurance between the Plaintiff and the Defendants, there existed an implied covenant of good faith and fair dealing between them.

### 20.

The Plaintiff suffered a loss within the policy period that was compensable under the terms of the policies, provided timely notice to the Defendants of the occurrence giving rise to coverage, and demanded payment for the same.

### 21.

The Defendants knew that there was a lack of reasonable basis for denial of the claim, or else acted in reckless disregard as to whether or not a reasonable basis existed for the denial of the claim.

### 22.

The Defendants denied the Plaintiff's claim for coverage in violation of the implied covenant of good faith and fair dealing and thereby committed bad faith.

### 23.

The Defendants' refusal to provide coverage and honor the plain terms of its insurance contract caused substantial damages to the Plaintiff, including, but not limited to, attorney's fees and emotional distress.

5

24.

The Defendants used unfair and deceptive acts and practices in dealing with Plaintiff's claim for coverage through, among other things, their failure to acknowledge and act on Plaintiff's claim, their failure to adhere to reasonable standards in promptly investigating the claim, their failure to promptly provide a reasonable explanation of the basis of the denial, and their failure to promptly settle Plaintiff's claim when liability was clear.

25.

The Defendants' refusal to provide coverage and to honor the plain terms of their insurance contracts was willful, vexatious, and without reasonable basis, resulting in substantial damages to the Plaintiff.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for the following relief:

(1)     For judgment against the Defendants in an amount to be determined by the jury that will fully compensate Plaintiff for the severe and permanent injuries and all other damages that he has sustained;

(2)     For pre-judgment and post-judgment interest;

(3)     For punitive damages;

(4)     For costs and disbursements herein; and

(5)     For such other and further relief as the Court deems just and equitable.

6

Dated this 18th day of October, 2010.

**JOHNSON, HEIDEPRIEM,
& ABDALLAH, L.L.P.**

BY

Scott A. Abdallah (sabdallah@jhalawfirm.com)
P.O. Box 2348
Sioux Falls, SD 57101-2348
(605) 338-4304

*Attorneys for the Plaintiff*


## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all issues so triable.

Scott A. Abdallah

7

 **State Farm Mutual Automobile Insurance Company**

222 S 84th Street
Linco. . 68510

5252b-2-0    MUIL VOL

## DECLARATIONS PAGE

NAMED INSURED    41-6059-223D

HURLEY, WILLARD C & JOAN M
705 W CHICORY CIR
SIOUX FALLS SD 57108-2831

| POLICY NUMBER | 12 6659-E20-41B |
|---|---|
| POLICY PERIOD JUL 12 2005 to NOV 20 2005 | |

IllIdudullllmbludlludalludlmllllllbndbllml

**AGENT**
MARLENE HARTZELL
3015 EAST 10TH STREET
SIOUX FALLS, SD 57103-2101

**DO NOT PAY PREMIUMS SHOWN ON THIS PAGE.**
**SEPARATE STATEMENT ENCLOSED IF AMOUNT DUE.**

PHONE: (605)332-7857

| YEAR | MAKE | MODEL | BODY STYLE | VEHICLE ID NUMBER | CLASS |
|---|---|---|---|---|---|
| 2006 | HONDA | RIDGELINE | PICKUP | 2HJYK16546H523625 | 1B3H50I |

| SYMBOLS | COVERAGES | PREMIUM |
|---|---|---|
| | See policy for coverage details. | 2006 HONDA |
| A | Bodily Injury/Property Damage Liability | $81.40 |
| | Limits of Liability-Coverage A-Bodily Injury | |
| | Each Person Each Accident | |
| | $250,000    $500,000 | |
| | Limits of Liability-Coverage A-Property Damage | |
| | Each Accident | |
| | $100,000 | |
| C | Medical Payments | $15.93 |
| | Limits of Liability-Coverage C | |
| | Each Person | |
| | $25,000 | |
| D100 | $100 Deductible Comprehensive | $87.17 |
| | $500 Deductible Collision | $138.00 |
| H | Emergency Road Service | $1.99 |
| R | Car Rental Expense | |
| | Limits of Liability - Car Rental Expense | |
| | Each Day    Each Accident | |
| | $16    $400 | |
| U | Underinsured Motor Vehicle | $8.40 |
| | Limits of Liability-U | |
| | Each Person    Each Accident | |
| | $250,000    $500,000 | |
| W | Uninsured Motor Vehicle | $36.52 |
| | Limits of Liability-W | |
| | Each Person    Each Accident | |
| | $250,000    $500,000 | |

| Total Premium for this policy period JUL 12 2005 to NOV 20 2005 | $378.16 | DO NOT PAY |

## IMPORTANT MESSAGES

Your policy consists of this declarations page, the policy booklet - form 9841.7, and any endorsements that apply, including those issued to you with any subsequent renewal notice.

Replaced policy number 0126659-41A.

Your total current 6 month premium for MAY 20 2005 to NOV 20 2005 is $384.20.

| EXCEPTIONS AND ENDORSEMENTS (See individual endorsements for details) |
|---|
| 6091    CERTIFICATE OF GUARANTEED RENEWAL |
| 6126HM    AMENDMENT OF PHYSICAL DAMAGE COVERAGES |
| 6893OD    AMENDMENT OF CAR RENTAL AND TRAVEL EXPENSES COVERAGE |
| 6941.1    AMENDMENT OF DEFINED WORDS, INSUREDS DUTIES, COVERAGES, AND CONDITIONS |
| INELIGIBLE MEDICAL PAY COVERAGE LIMITS OF $100,000 APPLIES EFFECTIVE 5/20/04 AND TERMINATES EFFECTIVE 06/18/04 , 12:01 A.M. |

**EXHIBIT**
A

Specimen

Date Countersigned _____    JUL 14 2005

By _Karen Werth_

Agent:    MARLENE HARTZELL
Telephone: (605)332-7857



## CERTIFICATE OF GUARANTEED RENEWAL
### 6091 Amendment of Cancellation and Renewal Conditions

This endorsement is a part of your policy. Except for the changes it makes, all other terms of the policy remain the same and apply to this endorsement. It is effective at the same time as your policy unless a different effective date is shown for the endorsement on the Declarations Page.

This endorsement is issued by the STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY of Bloomington, Illinois.

We agree that we will not cancel or non-renew this policy as long as:

1. this policy insures a *private passenger car*;

2. premiums are paid when due;

3. all drivers of *your car* maintain valid drivers licenses;

4. *you* continue to reside in an area in which State Farm Mutual Automobile Insurance Company sells automobile insurance and has the Certificate of Guaranteed Renewal available for use; and

5. no person other than the current named insured or that *person's* spouse becomes a named insured on this policy.

*You* will be able to select from those coverages which continue to be available from State Farm Mutual Automobile Insurance Company. Coverage will be provided by our policy, including any revisions that may be made to it.

Edward B. Rust, Jr.
Chief Executive Officer

Specimen

Page 1 of 1

6091

## 6126HM AMENDMENT OF PHYSICAL DAMAGE COVERAGES

This endorsement is a part of your policy. Except for the changes it makes, all other terms of the policy remain the same and apply to this endorsement. It is effective at the same time as your policy unless a different effective date is specified by us in writing.

In consideration of the premium charged, it is agreed that SECTION IV — PHYSICAL DAMAGE COVERAGES of your policy is changed as follows:

1. The following is added to the definition of *Loss*:

   *Loss* does not include any reduction in the value of any vehicle or deductable living quarters after it has been repaired, as compared to its value before it was damaged.

2. The first paragraph of Limit of Liability — Comprehensive and Collision Coverages is changed to read:

   The limit of our liability for *loss* to property or any part of it is the lower of:

   1. the actual cash value; or

   2. the cost of repair or replacement. The cost of repair or replacement does not include any reduction in the value of the property after it has been repaired, as compared to its value before it was damaged.

Page 1 of 1

6126HM

## 6893QQ AMENDMENT OF CAR RENTAL AND TRAVEL EXPENSES COVERAGES

This endorsement is a part of your policy. Except for the changes it makes, all other terms of the policy remain the same and apply to this endorsement. It is effective at the same time as your policy unless a different effective date is specified by us in writing.

In consideration of the premium charged, it is agreed that SECTION IV — PHYSICAL DAMAGE COVERAGES of your policy is changed as follows:

CAR RENTAL AND TRAVEL EXPENSES — COVERAGE R1 and CAR RENTAL AND TRAVEL EXPENSES — COVERAGE R2 are deleted and replaced by the following:

CAR RENTAL AND TRAVEL EXPENSES — COVERAGE R1. You have this coverage if "R1" appears in the "Coverages" space on the declarations page.

1. Car Rental Expense.

   a. 1:

   (1) a dollar amount is shown under "Limits of Liability – Car Rental Expense, Each Day" on the declarations page, we will pay you the daily rental charge up to that dollar amount; or

   (2) a percentage amount is shown under "Limits of Liability – Car Rental Expense, Each Day" on the declarations page, we will pay you that percentage of the daily rental charge

   when you rent a car from a car rental agency or car business. "Daily rental charge" means the daily rental rate plus charges for mileage and related taxes.

   If you choose not to rent a car, we will pay you $10 for each complete 24 hour period that your car is not drivable. You must report to us the period of time that your car was not drivable.

6893QQ

We will pay only if your car is not drivable because of a loss which would be payable under coverage D or G.

   b. Payment will be made for a period that:

   (1) starts:

   (a) when your car is not drivable due to the loss; or

   (b) if your car is drivable, when you leave it at the shop for agreed repairs; and

   (2) ends:

   (a) when your car has been repaired or replaced; or

   (b) when we offer to pay for the loss, if your car is repairable but you choose to delay repairs; or

   (c) five days after we offer to pay for the loss if:

   (i) your car was stolen and not recovered; or

   (ii) we declare that your car is a total loss;

   whichever comes first.

   If the incurred daily rental charge is payable under both Comprehensive Coverage and Car Rental and Travel Expenses Coverage, we will pay only under the

6893QQ

one coverage where you collect the most.

2. Travel Expenses. If your car is not drivable due to a loss which occurs more than 30 miles from home and which would be payable under coverage D or G, we will pay you for expenses incurred by you, your spouse and any relative for:

   a. commercial transportation fares to continue to your destination or home;

   b. extra meals and lodging needed when the loss to your car causes a delay enroute. The expenses must be incurred between the time of the loss and your arrival at your destination or home or by the end of the fifth day, whichever occurs first; and

   c. meals, lodging and commercial transportation fares incurred by you or a person you choose to drive your car from the place of repair to your destination or home.

3. Rental Car – Repayment of Deductible Amount Expense. We will pay the expense of any deductible amount you are required to pay the owner under comprehensive or collision coverage in effect on a substitute car rented from a car rental agency or car business.

Total Amount of Expenses Payable – Coverage R1

1. The most we will pay for "Car Rental Expense" incurred in any one occurrence is shown on the declarations page under "Limits of Liability – Car Rental Expense, Each Occurrence".

2. The most we will pay for "Travel Expenses" incurred by all persons in any one occurrence is $400.

3. The most we will pay for "Rental Car – Repayment of Deductible Amount Expense" incurred in any one occurrence is $400.

Chief Executive Officer

2

6893QQ

## 6941.1 AMENDATORY ENDORSEMENT

This endorsement is a part of *your* policy. Except for the changes it makes, all other terms of the policy remain the same and apply to this endorsement. It is effective at the same time as *your* policy unless a different effective date is specified by us in writing.

In consideration of the premium charged, it is agreed that *your* policy is changed as follows:

1. DEFINED WORDS

   a. The following definition is added:

      *Fungi* – means any type or form of fungus or fungi and includes:

      1. mold;

      2. mildew; and

      3. any of the following that are produced or released by fungi:

         a. mycotoxins;

         b. spores;

         c. scents; or

         d. byproducts.

   b. *Non-Owned Car* – The provision which reads:

      *Non-owned car* does not include a rented *car* while it is used in connection with the *insured's* employment or business.

      is deleted.

2. REPORTING A CLAIM — INSURED'S DUTIES

   Item 2, Notice to Us of Claim or Suit, is changed to read:

   Notice to Us of Claim or Suit

   If a claim or suit is made against an *insured*, that *insured* must at once send us every demand, notice or claim made and every summons or legal process received. That *insured* also must answer questions under oath when asked by anyone we name, as often as we reasonably ask, and sign copies of the answers.

3. SECTION I — LIABILITY — COVERAGE A

   a. Under the paragraph that reads "In addition to the limits of liability, we will pay for an *insured* any costs listed below resulting from such accident":

   (1) item 3c is deleted.

   (2) item 4 is changed to read:

      4. The following costs and expenses if related to and incurred after a civil lawsuit has been filed against an *insured* for damages for which liability coverage is provided by this policy:

         a. loss of wages or salary, but not other income, up to $100 for each day an *insured* attends at our request:

            (1) an arbitration;

            (2) a mediation; or

            (3) a trial of a civil suit.

         b. reasonable expenses incurred by an *insured* at our request, other than loss of wages, salary, or other income.

      The amount of any of the costs or expenses listed above that are incurred by an *insured* must be reported to us before we will pay.

   b. The provision titled Trailer Coverage is changed to read:

      Trailer Coverage

      The liability coverage extends to the ownership, maintenance or use, by an *insured*, of:

      1. trailers designed to be pulled by a *private passenger car* or a *utility vehicle*, except those trailers in 2a below.

         Farm implements and farm wagons are considered trailers while pulled on public roads by a *car* we insure for liability.

Page 1 of 5

6941.1

Specimen

25

These trailers are not described in the declarations and no extra premium is charged.

2. the following trailers only if they are described on the declarations page and extra premium is paid:

   a. trailers designed to be pulled by a *private passenger car* or a *utility vehicle*:

     (1) if designed to carry *persons*; or

     (2) while used with a motor vehicle whose use is shown as "commercial" on the declarations page (trailers used only for pleasure use are covered even if not described and no extra premium paid); or

     (3) while used as premises for office, store or display purposes; or

   b. trailers not designed to be pulled by a *private passenger car* or a *utility vehicle*.

When we refer to trailer coverage, *insured* means:

1. *you*;

2. *your spouse*;

3. the *relatives* of the first *person* named in the declarations;

4. any other *person* while using *your car*, a *newly acquired car* or a *temporary substitute car*, if its use is within the scope of consent of *you* or *your spouse*; and

5. any other *person* or organization liable for the use of a covered trailer by one of the above *insureds*.

THERE IS NO COVERAGE WHEN A TRAILER IS USED WITH A MOTOR VEHICLE THAT IS NOT COVERED UNDER THE LIABILITY COVERAGE OF THIS POLICY.

   c. The first paragraph of the Limits of Liability provision is changed to read:

The amount of bodily injury liability coverage is shown on the declarations page under "Limits of Liability – Coverage A – Bodily Injury, Each Person, Each Accident". Under "Each Person" is the amount of coverage for all damages due to *bodily injury* to one *person*. "*Bodily injury*" to one *person*" includes all injury and damages to others resulting from this *bodily injury*, and all emotional distress resulting from this *bodily injury* sustained by other *persons* who do not sustain *bodily injury*. Under "Each Accident" is the total amount of coverage, subject to the amount shown under "Each Person", for all damages due to *bodily injury* to two or more *persons* in the same accident.

4. **SECTION II — MEDICAL PAYMENTS — COVERAGE C**

**MEDICAL EXPENSES**

   a. The paragraph that reads:

These incurred expenses must be:

     1. for:

       a. services performed, or

       b. medical supplies, medication or drugs prescribed

       by a medical provider licensed by the state to provide the specific medical services; and

     2. for funeral services.

is deleted.

   b. The following is added:

Expenses are reasonable only if they are consistent with the usual fees charged by the majority of similar medical providers in the geographical area in which the expenses were incurred for the specific medical service.

Services are necessary only if the services are rendered by a medical provider within the legally authorized scope of the provider's practice and are essential in achieving maximum medical improvement for the *bodily injury* sustained in the accident.

6941.1

Specimen

c. The following is added to **What Is Not Covered:**

    (1) THERE IS NO COVERAGE FOR *BODILY INJURY* THAT RESULTS FROM EXPOSURE TO *FUNGI.*

    (2) THERE IS NO COVERAGE FOR *BODILY INJURY* THAT RESULTS FROM:

        (a) NUCLEAR REACTION;

        (b) RADIATION OR RADIO-ACTIVE CONTAMINATION FROM ANY SOURCE; OR

        (c) THE ACCIDENTAL OR INTENTIONAL DETONATION OF, OR RELEASE OF RADIATION FROM, ANY NUCLEAR OR RADIOACTIVE DEVICE.

5. SECTION III — UNINSURED MOTOR VEHICLE — COVERAGE U AND UNDERINSURED MOTOR VEHICLE — COVERAGE W

    a. Item 1 of **Limits of Liability – Coverage U** is changed to read:

        1. The amount of coverage is shown on the declarations page under "Limits of Liability – U – Each Person, Each Accident". Under "Each Person" is the amount of coverage for all damages due to *bodily injury* to one *person.* *"Bodily injury* to one *person"* includes all injury and damages to others resulting from this *bodily injury,* and all emotional distress resulting from this *bodily injury* sustained by other *persons* who do not sustain *bodily injury.* Under "Each Accident" is the total amount of coverage, subject to the amount shown under "Each Person", for all damages due to *bodily injury* to two or more *persons* in the same accident.

    b. Item 1 of **Limits of Liability – Coverage W** is changed to read:

        1. The amount of coverage is shown on the declarations page under "Limits of Liability – W – Each Person, Each Accident". Under

"Each Person" is the amount of coverage for all damages due to *bodily injury* to one *person.* *"Bodily injury* to one *person"* includes all injury and damages to others resulting from this *bodily injury,* and all emotional distress resulting from this *bodily injury* sustained by other *persons* who do not sustain *bodily injury.* Under "Each Accident" is the total amount of coverage, subject to the amount shown under "Each Person", for all damages due to *bodily injury* to two or more *persons* in the same accident.

6. SECTION IV — PHYSICAL DAMAGE COVERAGES

    a. The provision COMPREHENSIVE – COVERAGE D is changed to read:

        COMPREHENSIVE – COVERAGE D. *You* have this coverage if "D" appears in the "Coverages" space on the declarations page. If a deductible applies, the amount is shown by the number beside "D".

        1. Loss to Your Car. We will pay for *loss* to *your car* EXCEPT *LOSS* CAUSED BY *COLLISION* but only for the amount of each such *loss* in excess of the deductible amount, if any. If we offer to pay for the repair of damaged windshield glass instead of the replacement of the windshield and *you* agree to have such repair made, we will pay the full cost of repairing the windshield glass regardless of *your* deductible.

        Breakage of glass or *loss* due to hitting or being hit by a bird or an animal is payable under this coverage.

        2. We will pay *you* for transportation costs incurred if *your car* is stolen. We will pay up to \$25 per day beginning when *you* tell us of the theft and ending when we offer to pay for the *loss.*

        If the daily incurred transportation costs are payable under both Comprehensive Coverage and Car Rental and Travel Expenses Coverage, we will pay

6941.1

Specimen

only under the one coverage where *you* collect the most. If payments have been made under Car Rental and Travel Expenses Coverage and such payments have either exhausted the total amount payable under Car Rental Expense or reduced the total amount payable under Car Rental Expense to less than $25, then we will pay under Comprehensive Coverage.

b. The following is added to COLLISION – COVERAGE G:

   *Loss* caused by *collision* does not include *loss* due to:

   1. missiles or falling objects;

   2. windstorm or hail;

   3. earthquake, water or flood;

   4. theft or larceny;

   5. malicious mischief or vandalism; or

   6. riot or civil commotion.

c. The following is added to EMERGENCY ROAD SERVICE – COVERAGE H:

   We will pay the fair cost *you* incur for *your car* for locksmith services, up to one hour, to open *your car* if *your* key is lost, stolen or locked inside *your car*. We will pay only the cost of labor.

d. The last paragraph of CAR RENTAL EXPENSE – COVERAGE R that reads:

   Any car rent payable under coverage R is REDUCED TO THE EXTENT IT IS PAYABLE UNDER COMPREHENSIVE.

   is changed to read:

   If the incurred daily rental charge is payable under both Comprehensive Coverage and Car Rental Expense Coverage, we will pay only under the one coverage where *you* collect the most.

e. The last paragraph of item 1 under CAR RENTAL AND TRAVEL EXPENSES – COVERAGE R1 that reads:

   Any car rent payable under this coverage is REDUCED TO THE EXTENT IT IS PAYABLE UNDER COMPREHENSIVE.

   is changed to read:

If the incurred daily rental charge is payable under both Comprehensive Coverage and Car Rental and Travel Expenses Coverage, we will pay only under the one coverage where *you* collect the most.

f. The provision in the policy booklet titled Total Amount of Expenses Payable – Coverage R1 under CAR RENTAL AND TRAVEL EXPENSES – COVERAGE R1 is changed to read:

   Total Amount of Expenses Payable — Coverage R1

   1. The most we will pay for "Car Rental Expense" incurred in any one occurrence is $400.

   2. The most we will pay for "Travel Expenses" incurred by all *persons* in any one occurrence is $400.

   3. The most we will pay for "Rental Car – Repayment of Deductible Amount Expense" incurred in any one occurrence is $400.

g. Item 2 of the provision titled Trailer Coverage is changed to read:

   2. Non-Owned Trailer or Detachable Living Quarters

      Any physical damage coverage in force on *your car* applies to a non-owned:

      a. trailer, if it is designed for use with a *private passenger car*, or

      b. detachable living quarters unit

      used by the first *person* named in the declarations, his or her *spouse* or their *relatives*.

      The most we will pay under the comprehensive or collision coverage for a *loss* to such non-owned trailer or unit is $2,500.

      A non-owned trailer or detachable living quarters unit is one that:

      a. is not owned by or registered in the name of:

         (1) *you, your spouse*, any *relative;*

Specimen

## FE-5875 UNINSURED AND UNDERINSURED MOTOR VEHICLE COVERAGE (South Dakota)

This endorsement provides Uninsured and Underinsured Motor Vehicle Coverage if "Coverage U" is listed on the declarations page. The policy provisions contained within the sections titled AGREEMENT, DEFINITIONS, DUTIES AFTER LOSS, and CONDITIONS apply to this endorsement, except as modified herein.

### DEFINITIONS

The definitions of bodily injury and insured are replaced with the definitions below, but only for the purpose of the coverage provided by this endorsement:

"bodily injury" means bodily injury to a human being and sickness, disease or death that results from it.

"insured" means:

a. you, if a human being;

b. relatives who reside primarily with you; and

c. a ward or foster child of you or any relative, provided such ward or foster child resides solely with you.

The following definitions are added, but only for the purpose of the coverage provided by this endorsement:

"occupying" means in, on, entering, or exiting.

"uninsured motor vehicle" means a land motor vehicle:

a. the ownership, maintenance, and use of which is:

(1) not insured or bonded for bodily injury liability at the time of the accident; or

(2) insured or bonded for bodily injury liability at the time of the accident; but

(a) the limits are less than required by the financial responsibility act of the state where the vehicle insured by required underlying insurance is registered; or

(b) the insuring company:

(i) denies that its policy provides liability coverage for compensatory damages that result from the accident; or

(ii) is or becomes insolvent; or

b. the owner and operator of which remain unknown and which causes bodily injury to the insured. If there is no physical contact between that land motor vehicle and the insured or the vehicle the insured is occupying, then the facts of the accident must be corroborated by a disinterested person who witnessed the accident. You, resident relatives, and persons occupying the same vehicle as the insured are not disinterested persons.

Uninsured motor vehicle does not include a land motor vehicle:

a. insured under Coverage L of this policy, or operated by or used by any human being insured under Coverage L of this policy;

b. owned by, registered to, leased to, rented to, or furnished or available for the regular use by an insured;

c. owned by, registered to, leased to, rented to, or operated by a self-insurer under any motor vehicle financial responsibility law, any motor carrier law, or any similar law;

d. owned by, registered to, leased to, or rented to any government or any of its political subdivisions or agencies;

e. designed for use primarily off public roads except while on public roads, unless required underlying insurance includes recreational motor vehicle liability; or

f. while located for use as a dwelling or other premises, unless upon a public highway.

"underinsured motor vehicle" means a land motor vehicle:

a. the ownership, maintenance, or use of which is either:

(1) insured or bonded for bodily injury liability at the time of the accident; or

(2) self-insured for bodily injury liability under any motor vehicle financial responsibility law, any motor carrier law, or any similar law; and

CONTINUED

b. for which the total limits of insurance or self-insurance for bodily injury liability from all sources:

(1) are not adequate to pay the insured for his or her damages; or

(2) have been reduced by payments to persons other than the insured to the extent that they are not adequate to pay the insured for his or her damages.

Underinsured motor vehicle does not include a land motor vehicle:

a. insured under Coverage L of this policy, or operated by or used by any human being insured under Coverage L of this policy;

b. owned by, registered to, leased to, rented to, or furnished or available for the regular use by an insured;

c. owned by, registered to, leased to, or rented to any government or any of its political subdivisions or agencies;

d. designed for use primarily off public roads except while on public roads, unless required underlying insurance includes recreational motor vehicle liability;

e. while located for use as a dwelling or other premises, unless upon a public highway; or

f. defined as an uninsured motor vehicle.

## MAINTAINING REQUIRED UNDERLYING INSURANCE

Required underlying insurance for bodily injury caused by an uninsured motor vehicle or an underinsured motor vehicle must be maintained at all times in an amount at least equivalent to the Minimum Underlying Limits shown on the declarations page.

## COVERAGE U – UNINSURED AND UNDERINSURED MOTOR VEHICLE COVERAGE

We will pay compensatory damages for bodily injury that an insured is legally entitled to recover from the owner or operator of an uninsured motor vehicle or an underinsured motor vehicle. The bodily injury must be:

1. sustained by an insured; and

2. caused by an accident that:

a. occurs during the policy period; and

b. involves the operation, maintenance, or use of an uninsured motor vehicle or an underinsured motor vehicle as a motor vehicle.

We will pay only if the full amount of all required underlying insurance policies have been paid, and all available limits of all liability bonds, policies, and self-insurance plans that apply to the insured's bodily injury have been used up by payment of judgments or settlements, or have been offered in writing.

## Limit of Liability

1. The limit of liability for the coverage provided by this endorsement is shown on the declarations page under "Limit of Liability" following Coverage U – Uninsured and Underinsured Motor Vehicle.

The most we will pay for all damages resulting from bodily injury to all insureds injured in any one accident, including all damages sustained by other insureds as a result of that bodily injury, is the lesser of:

a. the amount shown under "Limit of Liability"; or

b. the amount of all damages resulting from bodily injury to all insureds reduced by:

(1) the sum of all payments for damages resulting from that bodily injury made by or on behalf of any person or organization who is or may be held legally liable for that bodily injury;

(2) all amounts paid by any required underlying insurance; and

(3) all amounts that have already been paid as expenses under medical payments, no-fault, or any similar coverage.

2. This limit is the most we will pay regardless of the number of:

a. insureds;

b. claims made;

c. automobiles or other vehicles insured; or

d. vehicles involved in the accident.

## Deciding Fault and Amount

1. a. The insured and we must agree to the answers to the following two questions:

CONTINUED

FE-5875
Page 3 of 4

(1) Is the **insured** legally entitled to re-cover compensatory damages from the owner or operator of the **uninsured motor vehicle** or **underinsured motor vehicle**?

(2) If the **insured** and **we** agree that the answer to 1.a.(1) above is yes, then what is the amount of the compensatory damages that the **insured** is legally entitled to recover from the owner or operator of the **uninsured motor vehicle** or **underinsured motor vehicle**?

b. If there is no agreement, then, if both parties consent, these questions may be decided by non-binding arbitration as follows:

(1) each party shall select a competent and impartial arbitrator. These two shall select a third one. If unable to agree on the third one within 30 days either party may request a judge of a court of record in the county in which the arbitration is pending to select a third one;

(2) the cost of the arbitrator and any expert witness shall be paid by the party who hired them. The cost of the third arbitrator and other expenses of arbitration shall be shared equally by both parties;

(3) the arbitration shall take place in the county in which the **insured** resides unless the parties agree to another place. State court rules governing procedure and admission of evidence shall be used; and

(4) arbitrators shall have no authority to decide any questions of law or conduct arbitration on a class-wide or class-representative basis.

2. We are not bound by any:

a. judgment unless **we**:

(1) receive reasonable notice of the pendency of the suit resulting in the judgment; and

(2) have a reasonable opportunity to protect **our** interest in the suit; and

b. default judgment against any person or organization other than **us**.

3. Regardless of the amount of any award, including any judgment or default judgment, **we** are not obligated to pay any amount in excess of the Limits of Liability of this endorsement.

## EXCLUSIONS

There is no coverage:

1. for any **insured** whose **bodily injury** results from the discharge of a firearm;

2. to the extent it benefits any government or any of its political subdivisions or agencies;

3. for punitive or exemplary damages;

4. for any order of restitution issued by a court in a criminal proceeding or equitable action; or

5. for **bodily injury** caused by an **uninsured motor vehicle** or an **underinsured motor vehicle** unless required underlying insurance:

a. is maintained;

b. applies to the **bodily injury**; and

c. pays **bodily injury** damages caused by an **uninsured motor vehicle** or an **underinsured motor vehicle** in an amount at least equivalent to the Minimum Underlying Limits shown on the declarations page.

## ADDITIONAL DUTIES AFTER LOSS

1. The **insured** must:

a. at **our** option, submit to an examination under oath, provide a statement under oath, or do both, as reasonably often as **we** require. The **insured** must answer questions under oath, asked by anyone **we** name, and sign copies of the answers. **We** may require each **insured** answering questions under oath to answer the questions with only that **insured's** legal representative, **our** representatives, any person or persons designated by **us** to record the questions and answers, and no other person present;

b. give **us** all the details about the death, injury, treatment, and other information that we may need as soon as reasonably possible after the injured **insured** is first examined or treated for the injury. If the **insured** is unable to give **us** notice, then any other person may give **us** the required notice;

c. be examined as reasonably often as we may require by physicians chosen and paid by **us**. A copy of the report will be sent to the **insured** upon written request; and

d. provide written authorization for **us** to obtain:

CONTINUED

FE-5875
Page 4 of 4

(1) medical bills;

(2) medical records;

(3) wage, salary, and employment information; and

(4) any other information we deem necessary to substantiate the claim.

If an injured insured is a minor, unable to act, or dead, then his or her legal representative must provide us with the written authorization. If the holder of the information refuses to provide it to us despite the authorization, then at our request the insured making claim or his or her legal representative must obtain the information and promptly provide it to us.

2. The insured must report an accident, involving a motor vehicle whose owner and operator remain unknown, to the police within 24 hours and to us within 30 days.

3. The insured must send us immediately a copy of all lawsuit papers if the insured files a lawsuit against the party liable for the accident.

4. Any insured making claim under this endorsement must, when we require, give us a signed and sworn to proof of loss, on forms we furnish.

## OTHER CONDITIONS

### If Other Coverage Applies

The Uninsured and Underinsured Motor Vehicle Coverage provided by this endorsement applies as excess to any liability coverage and uninsured and underinsured motor vehicle coverage, provided by any other insurance that applies to the bodily injury.

### Our Payment Options

We may, at our option, make payment to one or more of the following:

FE-5875

1. the insured;

2. the insured's surviving spouse;

3. a parent or guardian of the insured, if the insured is a minor or an incompetent person; or

4. a person authorized by law to receive such payment.

### Subrogation

If we are obligated under Uninsured and Underinsured Motor Vehicle Coverage to make payment to or for a person who has a legal right to collect from another party, then we are subrogated to that right to the extent of our payment.

The person to or for whom we make payment must help us recover our payments by:

1. doing nothing to impair that legal right;

2. executing any documents we may need to assert that legal right; and

3. taking legal action through our representatives when we ask.

### Legal Action Against Us

In addition to the provisions contained in the CONDITIONS section of this policy titled "Suit Against Us," legal action against us may only be commenced if the insured or that insured's legal representative within two years immediately following the date of the accident:

1. presents an Uninsured and Underinsured Motor Vehicle Coverage claim to us; and

2. files a lawsuit in accordance with the Deciding Fault and Amount provision of this coverage.

Except as provided in 2. above, no other legal action may be brought against us relating to Uninsured and Underinsured Motor Vehicle Coverage for any other causes of action.

## GENERAL RELEASE, HUSBAND AND WIFE

That We, Willard Hurley and Joan Hurley husband and wife, of the city of Sioux Falls , County of Lincoln, State of South Dakota, and each being of legal age, for and in consideration of the sum of **One Hundred Thousand and no/100** Dollars ($100,000.00), lawful money of the United States of America, to us in hand paid, the receipt whereof is hereby jointly and severally acknowledged, by these presents do, severally and jointly, for ourselves and each of us and for each of our heirs, executors, administrators, and assigns, remise, release and forever discharge Darwin Kruse, Terese Kruse and Sarah Kruse, their successors, and assigns, agents, servants and employees, and all other persons, firms or corporations, known or unknown, who are, or might be claimed to be liable, of and from any and all actions, causes of action, claims and demands accrued or to accrue for, upon or by reason of any damage, loss or injury to person or property, or both, and of whatsoever character, which heretofore has been or which hereafter may be sustained, whether or not such injury or loss now exists or is known or unknown, permanent or progressive, anticipated or unanticipated, or recovery therefrom uncertain and indefinite, including all loss for services, resulting or to result directly or indirectly, and of and from any and all claims and demands whatsoever in law or in equity, as the result of a certain accident which happened on or about October 21, 2007 for which we have claimed the said Darwin Kruse, Therese Kruse and Sarah Kruse to be legally liable, which liability is expressly denied. Said sum of money is received in compromise and settlement of said claim as hereinbefore set out.

Willard and Mrs. Willard Hurley acknowledge they are responsible for any and all liens, claims, or other encumbrances that any state or federal agency, insurance company, ERISA health care plan, self insured group health organization, health care provider or any other entity or individual may have against the proceeds of this settlement. **Willard and Joan Hurley** warrant that no person or entity has asserted or is able to assert any lien, claim, or is entitled to any portion of the consideration recited above for this settlement which has not been waived by the provider, compromised in writing by the provider, or satisfied. Willard and Mrs. Willard Hurley agree to indemnify and hold harmless the insured or at fault party and Allied Insurance from any lien or claim of entitlement to any portion of the settlement proceeds asserted at any time by any person or entity.

The parties acknowledge that the amount paid is in consideration for physical injury, and that all amounts paid to the undersigned are non-punitive in nature and intended to compensate the undersigned for damages which were sustained and which are associated with the physical injury on October 21, 2007

In accordance with I.R.C. §104(a) (2), as amended by S.B. § 1605, it is hereby agreed that this payment is solely attributable to all of the undersigned's claims arising out of physical injuries and or sickness related to the accident on October 21, 2007

Willard and Joan Hurley specifically reserve their UIM or excess claims against State Farm or any other insurer for the amount of their damages in excess of the liability limits insuring Kruse. This Release shall not be construed in any way to jeopardize the claims Willard or Joan Hurley for UIM benefits, and shall not be given effect if a court of competent jurisdiction construes this agreement to jeopardize the UIM claims.

EXHIBIT

C

This release expressly reserves all rights of the person or persons, firm or corporation, on whose behalf this payment is made and the rights of all persons in privity or in any way connected with them and reserves to them their right to pursue their legal remedies, if any, against the undersigned or those in privity or in any way connected with the undersigned.

I HEREBY STATE I have read this release, know the contents thereof, and have signed the same relying on my own judgment and on no representation of others, and of my own free will accord this ____26 th___ day of ____June_____, 20 _09_.

Witness _Yvonne M Ring_

Address _Sioux Falls, SD_

Witness _____

Address _____

State of _South Dakota_

County of _Minnehaha_ } ss.

Husband _W Hurley_

Wife _Joan Hurley_

On this _26 th_ day of _June_____, A.D. 20 _09_, before me, a Notary Public, in and for said County and State personally appeared _Will Hurley_ ~~Minnehaha~~ to be the person(s) named in and who executed the above release, and who acknowledged the same to be _a_ free and voluntary act and deed.

_____
Notary Public

(SEAL)

(My Commission expires _2/11/11_ )

SCOTT A. ABDALLAH
NOTARY PUBLIC
SOUTH DAKOTA

On this 25th day of June, A.D., 2009 before me, a Notary Public, in and for said County and State personally appeared Joan Hurley to be person(s) named in and who executed the above release, and who acknowledged the same to be a free and voluntary act and deed.

YVONNE M. RING
NOTARY PUBLIC
SOUTH DAKOTA

Yvonne M Ring
Notary Public
My Commission expires 6-19-2014

# Hold Harmless Agreement

As legal counsel for Willard Hurley and Joan Hurley, I have fully discussed their claim for his injuries incurred as a result of the accident on October 21, 2007, in Sioux Falls, SD

Willard and Joan Hurley have agreed to accept $100,000.00 in a full and final settlement of the claim against Darwin Kruse, Therese Kruse and Sarah Kruse. They have read the release and agree to voluntarily sign such release of their own accord.

We understand the settlement is inclusive of the subrogation claims of State Farm Insurance. We agree to pay all subrogation claims from proceeds of the settlement amount as noted above.

Willard and Joan Hurley and I agree on behalf of my clients, myself and my law firm to defend, indemnify and hold harmless the released party and Depositors Insurance Company against any and all claims, demands and actions that arise out of any injury or damages sustained in the accident, including, but not limited to any claims for contribution, indemnity or subrogation by State Farm Insurance or any other persons making claim for contribution known or unknown at this time.

_6/26/09_
Date

_6/25/09_
Date

_6/26/09_
Date

_____
Willard Hurley

_____
Joan Hurley

_____
Scott Abdallah, attorney on record

# State Farm Insurance Companies



State Farm Insurance
PO Box 83106
Lincoln, NE 68501-3106

Phone:1-(800) 889-7144
Fax: 1-(800) 423-0474

July 28, 2009

Scott Abdallah
Johnson, Heidepriem, Janklow, Abdallah & Johnson, Llp
PO Box 2348
Sioux Falls, SD 57101

RE:   Claim Number:   41-4305-361
      Date of Loss:   October 21, 2007
      Our Insured:    Willard C Hurley
      Your Client: Willard C. Hurley

Dear Scott:

This letter is a follow up to our conversation on July 28, 2009.

After review of the material presented; it appears that Dr, Hurley has been fully compensated for the injury that he received on October 21, 2007. Based on this information State Farm will not be presenting an offer from the underinsured coverage.

Should you have any additional information you would like to present for consideration, please don't hesitate to call

Sincerely,

*Steve Ladig / ph*

Steve Ladig x5539
Claim Representative
1-(800) 889-7144
Ext: 5975539

State Farm Mutual Automobile Insurance Company

HOME OFFICES:  BLOOMINGTON, ILLINOIS 61710-0001

**EXHIBIT**

D

| STATE OF SOUTH DAKOTA ) | IN CIRCUIT COURT |
|---|---|
| :ss | |
| COUNTY OF LINCOLN ) | SECOND JUDICIAL CIRCUIT |

| WILLARD HURLEY, | CIV. #10-772 |
|---|---|
| Plaintiff, | |
| vs. | **PLAINTIFF'S INTERROGATORIES AND REQUESTS FOR PRODUCTION OF DOCUMENTS TO DEFENDANT STATE FARM FIRE AND CASUALTY COMPANY (FIRST SET)** |
| STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY and STATE FARM FIRE AND CASUALTY COMPANY, | |
| Defendants. | |

## TO:  DEFENDANT STATE FARM FIRE AND CASUALTY COMPANY

Plaintiff hereby requests answers to the following Interrogatories pursuant to SDCL § 15-6-33. Plaintiff hereby further requests responses to the following Requests for Production of Documents pursuant to SDCL § 15-6-34(b). Please be advised that your answers and responses must include all information available not only to you but available to your agents, attorneys, insurers or others who have information available to you upon inquiry to them.

These Interrogatories and Requests for Production of Documents shall be deemed as continuing in the event you later acquire any information. In these Interrogatories to you, the following definitions and instructions apply. **Note that when documents are identified (as defined in definition #2 below), there is an automatic demand for production, made pursuant to SDCL § 15-6-34 (with an option to you to produce copies in lieu of formal inspection).**

## DEFINITIONS AND INSTRUCTIONS

For purposes of this set of Interrogatories and Requests for Production of Documents, the following definitions apply:

(1) Document includes any written, recorded or graphic matter, however produced or reproduced, including, but not limited to, correspondence, electronic mail, telegrams or other written communications, photographs, drawings, contracts, agreements, notes, memoranda, work papers, diaries, minutes of meetings, books of receipt or any other writings.

(2) Identify means, with respect to a document, to set forth the following information:

    (a)    Its nature (e.g., electronic mail, letter, memorandum, report, etc);

    (b)    The date it bears or, if undated, the date it was written or created;

   (c) The identity of the person(s) who wrote or created it;
   (d) The identity of the person(s) who received it;
   (e) Its file number or other identifying mark or code;
   (f) Its general subject matter; and
   (g) Its present or last known location and custodian.

In all cases where identification of a document is requested, in lieu of such specification, you may supply legible copies of such documents.

   (3) Identify, with respect to a natural person, means to set forth on the first occasion that such person is identified, the following information as far as known to you:

   (a) Full name;
   (b) Job title and employer at the time of the events complained of in the Complaint or Counterclaims in this lawsuit;
   (c) Present or last known residence address and telephone number;
   (d) Present or last known job title and business address; and
   (e) Present or last known employer.

   (4) Identify, with respect to any entity other than a natural person, means to set forth the full name or title of the entity and on the first occasion that such entity is identified to also state the address and principal business or activity of such entity.

   (5) Identify, with respect to an oral communication or other event, means to set forth the following information:

   (a) Its general nature (e.g., meeting, telephone call, conference call, luncheon, etc.);
   (b) The date it occurred and the time;
   (c) The place it occurred;
   (d) For a communication, the identity of each originator and recipient; for an event, the identity of each person present; and
   (e) The identity of all persons present when the communication or event occurred.

   (6) Date means the exact day, month and year, if ascertainable; if not, the closest approximation that can be made thereto.

   (7) Authority means case law, legal treatises, statutes or secondary legal sources.

   These Interrogatories and Requests for Production of Documents shall be deemed continuing in nature. Therefore, any information that comes to your attention or any documents discovered after you have responded to these Interrogatories and Requests for Production of Documents and which refer or relate to the documents requested or the information sought shall be produced in a timely fashion.

## INTERROGATORIES

1.       Identify each person providing or furnishing any of the information you used in preparing answers to these interrogatories and state the answers that person assisted in answering.

2.       Identify each person by name, address, and phone number who you believe may have knowledge or information relating to the claims and defenses made in this matter who are known to you and describe in detail the information you believe each person possesses.

3.       Identify each person you have interviewed concerning the claims and defenses herein, and state with respect to each such person whether the interview was recorded and, if so, whether in longhand, shorthand, or by mechanical or electronic transcription device. Please attach to your answers a copy of all interviews and statements you have taken.

4.       Identify each witness you expect to call as an expert witness at trial. Please state the following:

        (a)       The name, address, occupation, and qualifications of the expert witness;

        (b)       The subject matter in which the expert is expected to testify;

        (c)       The substance of the facts and opinions to which the expert is expected to testify;

        (d)       A summary of the grounds for each such opinion; and

        (e)       A bibliography of all medical literature, treatises, papers, or other publications in support of the expert's opinion.

        (f)       On what other cases such expert has testified.

5.       Do you contend that Plaintiff has made any statements or admissions against his interest? If so, then for each statement or admission please state the following:

        (a)       What Plaintiff wrote or said;

        (b)       To whom it was written or said;

        (c)       When it was written or said, including the date and time;

        (d)       Where it was written or said;

        (e)       Whether and what documents or materials exist concerning the alleged admission against interest; and

3

    (f)    The name, address and phone number of each person who read or heard it or who was present at the time.

6.    Do you have any photographs, videotapes, motion pictures or other visual representations that were taken of any thing, person, place, location, or otherwise created as a result of this matter? If so, please state:

    (a)    The name and address of the individual making or taking those visual representations;

    (b)    What is depicted in each of those visual representations;

    (c)    The date, place and time each of those visual representations were taken or made; and

    (d)    The name and address of the present custodian of each visual representation, including negatives.

7.    Have you, or your attorneys, agents, or insurance company had any surveillance done or made of the party serving these interrogatories upon you? If so, identify:

    (a)    Who made the surveillance;

    (b)    The dates of the surveillance:

    (c)    The places at which the Plaintiff was observed; and

    (d)    Whether, in making it, any person was interviewed or examined, and if so, identify each such person.

8.    When did the your company first receive notice of Plaintiff's claim for benefits under the policies which are the subject of this lawsuit?

9.    State the full name, address, telephone numbers, and job title or capacity of your company's representative who received this notice.

10.    Was any writing or other form of record made that evidence the receipt of such notice by a representative of your company? If so, for each writing, state:

    (a)    The date it was prepared;

    (b)    The identify of the contract which led to the its preparation;

    (c)    The reason for its preparation;

4

    (d)    The full name, address, telephone number and job title or capacity at the time of preparation of the person who prepared it;

    (e)    Its identity; and

    (f)    Its substance.

11.    Describe, in detail and not in summary fashion, the exact claims handling procedure used by your company in processing the Plaintiff's claim, including in this answer the full name, address, telephone number, and job title or capacity of each employee or representative of your company, or outside parties or persons, involved in the claims handling process and state whether any of said persons opined as to the damages suffered by the Plaintiff, their opinion, and specifically identify as to each person each document that was relied upon in making said evaluation.

12.    State the reserves that have been set by your company in response to Plaintiff's claims for benefits under the policies, when the reserves were set, and the names and employment position of the person or persons involved in the setting of the reserve amount.

13.    Does your company have any ground for contending that Plaintiff is not entitled to the benefits he is claiming in this suit under the policies? If so, for each ground state:

    (a)    Its substance;

    (b)    The full name, address, telephone number, and occupation of each person who has knowledge of facts contributing to such contention;

    (c)    The facts known to each person listed in your response to the preceding sub-interrogatory;

    (d)    A description of each and every document, record, memoranda, inter-office memoranda, medical record or other document of any kind which was relied upon as a ground for contending that Plaintiffs was not entitled to the compensation they were seeking under the policy; and

    (e)    Whether any record was made that supports said denial and, if so, please identify the custodian of said record including the full name, address, telephone number, and occupation of the custodian of such record.

14.    Has an investigation been conducted by your company with respect to any aspect of the policies or the underlying allegations of the Plaintiff and, specifically, your company's denial of benefits under the policies which is the subject of this lawsuit? If so, for each investigation, state:

    (a)    The dates made;

    (b)      The full name, address, telephone number and job title or capacity of the person or persons who authorized it;

    (c)      The name, address, telephone number and job title or capacity of each investigator; and

    (d)      Why the investigation was undertaken.

15.     Describe, in detail and not in summary fashion, each and every document relied upon by your company in its denial of Plaintiff's claim for benefits under the policies. For each such document, state the full name, address, telephone number, and occupation of the custodian of such record or document.

16.     Please state whether you retained any experts to review the Plaintiff's claims or materials provided by the Plaintiff and, if so, provide their name, address, and phone number, state what opinions they provided and identify any document authored by such expert(s), and identify any other cases in which you have utilized such expert(s) services.

### REQUESTS FOR PRODUCTION OF DOCUMENTS

1.     Produce any and all documents identified in your answers to the above interrogatories, or reviewed or relied upon in answering the above interrogatories.

2.     Produce any and all documents, including electronic mail, regarding any matter set forth in Plaintiff's Complaint and/or your Answer.

3.     Produce duplicate copies of any photographs, videotapes, motion pictures or other visual representations, of any other matters pertaining to the issues in this lawsuit.

4.     Produce a complete copy of the resume and curriculum vitae of any expert retained or consulted regarding the subject matter of this lawsuit.

5.     With respect to any expert retained by you, produce a complete copy of all material prepared by such expert, and each and every document, report, chart, graph, object, summary, compilation of data, or other thing relied upon by any of your experts, in whole or in part, in the formulation of the expert's opinions and conclusions in this case.

6.     Produce copies of each exhibit you may or will offer at the deposition of any witness in this case or at the trial of this case.

7.     Produce a copy of each policy of insurance in effect at the time of the allegations outlined in Plaintiff's Complaint or thereafter, under which any insurer has paid or may be obligated to pay any benefits of any kind to you as a result of the damage at issue in this case. This should show the policy limits. A request is also made for any reservation of rights agreement or letter.

6

8. Produce copies of any and all written and recorded statements obtained by you in any form, from any person, regarding any of the events or happenings detailed in Plaintiff's Complaint and/or your Answer.

9. Produce copies of any written or electronic documents pertaining to the respective workloads and responsibilities of each of the persons who in any manner participated in the handling and evaluation of the Plaintiff's claims. Said request should include requests for additional staff or assistance by any of said persons.

10. Please provide copies of any employment evaluations for the individuals that reviewed the Plaintiff's claims, any employment contracts with said person(s), any incentive plans offered to such persons, and copies of such person(s) employment files.

11. If you utilize claims tracking software please identify the same and generate and provide a copy of any reports or records pertaining to the Plaintiff's claims.

12. Produce copies of any policies existing at the time the Plaintiff's claims were submitted to State Farm Mutual Automobile Insurance Company dealing directly or indirectly with claims handling procedures specifically including, but not limited to, the proper amount of time for claims handling and the scope and nature of investigation pertaining to claims handling.

13. Produce a full and complete copy of the Defendant's claim file associated with the policies and claims at issue in this matter. If you claim that these documents are privileged by work product, or otherwise, please prepare a "Vaughn Index" which must list for each separate document:

        (a)    The date, author, and his or her capacity;
        (b)    The recipient(s) (including copy recipient(s)) and their capacities;
        (c)    The subject matter of the document;
        (d)    The purpose of its production; and
        (e)    A detailed specific explanation of why the document is privileged
             or immune from discovery.

Dated this 18th day of October, 2010.

JOHNSON, HEIDEPRIEM
& ABDALLAH, L.L.P.

BY _____
Scott A. Abdallah (sabdallah@jhalawfirm.com)
P.O. Box 2348
Sioux Falls, SD 57101-2348
(605) 338-4304

*Attorneys for the Plaintiff*

7

**DEPARTMENT OF REVENUE & REGULATION**
**DIVISION OF INSURANCE**
**445 EAST CAPITOL AVENUE**
**PIERRE, SD 57501-3185**

B3 Legal

PRESENTED
FIRST CLASS

02 1R        $ 0
0006857824     OCT
MAILED FROM ZIP CODE

## NOT D-4

## FIRST CLASS MAI

NOT D-4

NOT D-4

NOT D-4

NOT D-4