UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | | |
|---|---|---|
| WILLARD HURLEY, | ) | CIV. 10-4165-KES |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | ORDER |
| | ) | |
| STATE FARM MUTUAL | ) | |
| AUTOMOBILE INSURANCE | ) | |
| COMPANY and | ) | |
| STATE FARM FIRE AND CASUALTY | ) | |
| COMPANY, | ) | |
| | ) | |
| Defendants. | ) | |

Plaintiff, Willard Hurley, alleges a bad faith claim against defendants,

State Farm Mutual Automobile Insurance Co. and State Farm Fire and

Casualty Co. (collectively State Farm). Hurley moved to compel discovery,

which the court granted in part and denied in part. Docket 49. Because State

Farm claimed that the attorney-client privilege protected some documents, the

court conducted an in camera review of the allegedly privileged documents.

After reviewing the documents, the court determined that further argument

was necessary and held a hearing on July 9, 2012.

**BACKGROUND**

The pertinent facts to this order are as follows:

Hurley maintained auto coverage and umbrella coverage policies with

State Farm. On October 21, 2007, Hurley was injured in an automobile

accident as a result of another driver's actions. The other driver's personal liability insurance limits were insufficient to compensate Hurley. After State Farm declined to substitute its own draft of the other driver's settlement, Hurley accepted the limits of the other driver's policy and entered into a release with the driver.

Hurley then filed a claim with State Farm, which denied his claim. Hurley brought suit against State Farm for breach of contract to recover under the underinsured motorist (UIM) provisions of his policy. After about one year of litigation, State Farm made an unconditional payment of $340,000 to Hurley and later paid an additional $200,000 to resolve the case. Hurley then commenced this action alleging first-party bad faith refusal to pay an insurance claim.

## DISCUSSION

In interrogatory numbers 6-10 and requests for production numbers 1, 14, and 15, Hurley seeks information concerning State Farm's conduct that occurred after Hurley filed his UIM claim with State Farm. Hurley seeks the information to understand why State Farm increased his claim's valuation from zero dollars to $540,000. State Farm originally refused to provide the requested information but, after Hurley moved to compel, State Farm provided all the documents with the portions subject to the attorney-client privilege redacted.

2

State Farm contends that the information sought is not relevant because it occurred after the breach of contract litigation commenced, and it does not relate to State Farm's initial denial of Hurley's claim. According to State Farm, only information regarding its initial denial of Hurley's claim is relevant.

The South Dakota Supreme Court has addressed State Farm's argument. In *Dakota, Minnesota & Eastern Railroad Corp. v. Acuity*, 771 N.W.2d 623 (S.D. 2009), the court reasoned that

> [f]irst-party bad faith . . . is an intentional tort and typically occurs when an insurance company consciously engages in wrongdoing during its *processing or paying* of policy benefits to its insured. In the first-party context, there exists a contractual relationship, whereby the insurer has accepted a premium from its insured to provide coverage. . . . Because of the nature of this relationship, "[w]e recognized in *Julson* that bad faith can extend to situations beyond mere denial of policy benefits." *Id.* (citing *Julson v. Federated Mut. Ins. Co.*, [562 N.W.2d 117, 119 (S.D. 1997)]. Bad faith conduct may include the failure to conduct a reasonable investigation concerning the claim.

*Id.* at 629 (emphasis in original) (other quotations omitted). "The question for bad faith is whether the insurer's investigation or decision to deny a claim was unreasonable and was made in knowing or reckless disregard of the facts at the time the insurer made its decision to litigate rather than to settle." *Id.* at 632. Additionally, an insurer has a duty to reassess the insured's claim based upon information received subsequent to its initial decision. *Id.* at 633 (citing *Walz v. Fireman's Fund Ins. Co.*, 556 N.W.2d 68, 71 (S.D. 1996)).

The court then addressed the *admissibility* of an insurer's conduct after the institution of litigation on the underlying claim:

> [W]e believe it would be a rare case where the insurer's decisions and conduct in the underlying litigation would be admissible in a first party bad faith claim. The appropriate inquiry . . . in determining the relevance of such evidence is whether the insurer's post-filing conduct sheds light on the reasonableness of the insurer's decision or conduct in denying insurance benefits. The tort of first party bad faith . . . typically occurs when an insurance company engages in wrongdoing during its processing or paying of policy benefits to its insured.

*Id.* at 635 (quotations omitted). The court concluded that because significant discovery remained outstanding, it could not determine the admissibility of the post-litigation conduct and remanded the matter back to the trial court for consideration after the completion of discovery. *Id.* at 636.

Hurley seeks information regarding why State Farm changed its valuation of his UIM claim. State Farm made a substantial change in position after litigation began—from zero dollars to more than half-a-million dollars. The information sought by Hurley would shed light on whether State Farm's initial denial of his claim was reasonable. Because a first-party bad faith claim focuses on whether an insurance company consciously engaged in wrongdoing during the processing or paying of policy benefits to its insured, evidence relating to State Farm's decision to dramatically increase the valuation of Hurley's claim is relevant.

4

Furthermore, the relevancy standard for discovery is broader than the standard for admissibility. *See, e.g.*, Fed. R. Civ. P. 26(b)(1) (allowing discovery that "appears reasonably calculated to lead to the discovery of admissible evidence."); *Hofer v. Mack Trucks, Inc.*, 981 F.2d 377, 380 (8th Cir. 1992) (reasoning that while Rule 26(b) forbids "fishing expeditions in discovery," the relevancy standard for "discovery is broader than in the context of admissibility." (citing *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 352 (1978))). Thus, State Farm's actions up to and including the time that it paid Hurley's claim are relevant and discoverable.

The parties dispute whether State Farm waived its right to assert the attorney-client privilege. State law supplies the rules of decision for attorney-client privilege in diversity cases. Fed. R. Evid. 501. Because this is a diversity case and South Dakota law is the governing substantive law, South Dakota law supplies the law on privilege.

The party claiming a privilege has the burden to establish that the privilege exists. *DM&E*, 771 N.W.2d at 637 (citing *State v. Catch the Bear*, 352 N.W.2d 640, 645 (S.D. 1984)). The attorney-client privilege protects from disclosure "confidential communications made for the purpose of facilitating the rendition of professional legal services to the client[.]" SDCL 19-13-3. There are four "[m]inimum elements" of the attorney-client privilege: "(1) a client; (2) a confidential communication; (3) the communication was made for the

5

purpose of facilitating the rendition of professional legal services to the client; and (4) the communication was made in one of the five relationships enumerated in SDCL 19-13-3." *Catch the Bear*, 352 N.W.2d at 645.

After reviewing the documents provided to the court by State Farm in camera, the court finds that the documents are confidential communications from an attorney to a client, one of the five enumerated relationships in SDCL 19-13-13. The communications also appear to have been made for the purpose of rendering professional legal services to the client. Thus, the documents are protected by the attorney-client privilege.

A client can waive the attorney-client privilege if, among other reasons, the client's actions fall under the advice-of-counsel exception to the attorney-client privilege. *Bertelsen v. Allstate Ins. Co.*, 796 N.W.2d 685, 701 (S.D. 2011). In *Bertelsen*, the South Dakota Supreme Court reaffirmed its reliance on the test from *Hearn v. Rhay*, 68 F.R.D. 574 (E.D. Wash. 1975) for determining whether a client has waived the attorney-client privilege. *Id.* at 702. *Hearn* articulates a three-part analysis: (1) whether the assertion of the attorney-client privilege was the result of an affirmative act; (2) whether the asserting party, through the affirmative act, made the protected information relevant to the case; and (3) whether " 'application of the privilege would have denied the opposing party access to information vital to his defense.' " *Id.* (quoting *Hearn*, 68 F.R.D. at 581).

6

In *Bertelsen*, the South Dakota Supreme Court added additional considerations to the *Hearn* analysis. "First, the analysis . . . should begin with a presumption in favor of preserving the privilege." *Id.* at 702. "Second, a client only waives the privilege by expressly or impliedly injecting his attorney's advice into the case." *Id.* (reasoning that "[a] denial of bad faith or an assertion of good faith alone is not an implied waiver of the privilege." (citations omitted)). Under this analysis, "[t]he key factor is reliance of the client upon the advice of his attorney." *Id.* (citation omitted). "Finally, a client only waives the privilege to the extent necessary to reveal the advice of counsel he placed at issue." *Id.* (citing *DM&E*, 771 N.W.2d at 638).

Hurley claims that State Farm impliedly asserted the advice-of-counsel exception during two of its employees' depositions. Judith Prenzler, a State Farm employee, prepared an assessment of Hurley's UIM claim's value. Docket 31-6 at 2. During her deposition, attorney Fuller instructed Prenzler not to answer certain questions posed by Hurley's counsel:

> Q: Ultimately what was the value that you placed on Dr. Hurley's underinsurance claim prior to settlement?
>
> MR. FULLER: And I'm going to object for the reason that without further review of her—Judy's further review of documents, that that [sic] information may be based upon attorney-client communications or recommendations. I'm instructing her not to answer.

Docket 31-6 at 2. Hurley's counsel questioned Prenzler about State Farm's change in position to initially offer zero dollars in July of 2009 to eventually

7

paying Hurley $540,000: "Q: Tell me what factors caused State Farm's change of position so drastically. MR. FULLER: Again, I'm instructing her not to answer." Docket 31-6 at 2.

Steve Lading, a State Farm employee, completed the initial evaluation of Hurley's claim for mediation. Docket 31-7 at 2 ("I'm the one that had done the evaluation, the initial evaluation, for the mediation."). At one time, State Farm, through Ladig, sent Hurley a check for $340,000. Hurley's counsel questioned Ladig about this check:

> Q: At the time the check was sent, did his claim in your opinion have a value in excess of $340,000?

> MR. FULLER: Well, I'm going to object to this, because I'm not sure what role if any he had in those decisions, and a lot of that is attorney-client communication, recommendations, and I certainly know I didn't talk to Steve Ladig about it.

Docket 31-7 at 2. Hurley's counsel also questioned Ladig about determining Hurley's loss of earning capacity: "Q: Did you change your mind at all on loss of earning capacity? MR. FULLER: I'm instructing him not to answer that question. His information and his evaluation, if he did an evaluation, was based, you know, on attorney-client communication." Docket 31-7 at 2.

The court questioned State Farm about the deposition testimony during the hearing. State Farm responded that it has the right to assert the advice-of-counsel defense, but it chose not to assert the defense, and, thus, it did not waive the attorney-client privilege. Instead, State Farm argued that it changed

its position regarding the valuation of Hurley's claim after Hurley's treating physician stated that his condition was worsening and his employer was seeking a physician who could do the procedures that Hurley was unable to perform. To support this position, State Farm referenced an email dated September 2, 2010, from Teresa Herrera to Jody Anderson (their positions at State Farm are unclear) explaining the treating doctor's analysis.

State Farm's amended answers to interrogatories state that the factors that caused it to pay Hurley $540,000 in insurance benefits includes information documented in the activity log, "excluding information protected by the attorney-client privilege." Docket 36-2 at 4. But during oral argument, in response to the court's inquiry, State Farm stated that the decision to change the valuation in Hurley's claim was "intertwined" with the advice of counsel. The court then asked State Farm whether it was true that its decision to change the valuation in Hurley's claim was based on both the advice of counsel and information that State Farm independently collected. State Farm responded that the court was correct, and again stated that its decision to change the claim's valuation was "intertwined" with the advice of counsel. Because the amended answers to interrogatories seem to conflict with the responses to inquiries during oral argument, the court is unclear as to the basis for State Farm's increase in its payment and whether the justification includes information obtained from advice of counsel.

Hurley is entitled to know why State Farm increased its payment because the question of whether State Farm had a reasonable basis to deny his claim is a necessary element in a first-party bad faith case. *See, e.g.*, *Brooks v. Milbank Ins. Co.*, 605 N.W.2d 173, 177 (S.D. 2000) (reasoning that under South Dakota law the elements of a first-party bad faith claim include "the absence of a reasonable basis for denial of the claim; and that the insurer knew there was not a reasonable basis to deny the claim or that the insurer acted in reckless disregard of the existence of a reasonable basis to deny the claim.").

Under *Bertelsen*, the court must examine whether State Farm, through its affirmative act, made the privileged information relevant to the case. Ladig's and Prenzler's depositions and attorney Fuller's argument that the advice of counsel was "intertwined" with State Farm's decision to change the valuation of Hurley's claim could show that State Farm was relying at least in part upon the advice of counsel in determining the value of Hurley's claim. State Farm, however, has produced some evidence, namely the email dated September 2, 2010, which could show that it did not rely on the advice of counsel in changing its valuation of Hurley's claim.

Given the presumption in favor of preserving the attorney-client privilege and the uncertainty of whether State Farm has impliedly asserted the

10

advice-of-counsel defense in this bad faith action, the court is unable to rule on Hurley's motion to compel at this time.

During the hearing, Hurley requested as alternative relief an opportunity to depose Prenzler and Ladig again and to depose Herrera and Anderson. Conducting the four depositions will allow Hurley an opportunity to discover the information to which he is entitled while allowing State Farm to clarify whether it relied on the advice of counsel in determining whether to pay Hurley's claim. Thus, Hurley's request for the depositions is granted. In the event Prenzler, Ladig, Herrera, and Anderson claim that their decision to increase their payment to Hurley was based in part on attorney-client privileged information, they should state that for the record. They should then record in a written affidavit the substance of the attorney-client privileged information upon which the witness relied and file the affidavit under seal with the court for further in camera review.

State Farm's conduct, especially its refusal to allow Prenzler and Ladig to respond during the depositions to the non-privileged reasons for the increase in payment to Hurley, necessitates the additional depositions. As a result, State Farm will pay the out-of-pocket expenses for Hurley's attorney to conduct the four depositions. *See, e.g.*, *United States ex rel. O'Keefe v. McDonnell Douglas Corp.*, 132 F.3d 1252, 1258 (8th Cir. 1998) (reasoning that the district court has wide latitude in discovery); *Spann v. Crawford*, No. 06-

11

4042, 2007 WL 2407020, at *2 (W.D. Mo. Aug. 17, 2007) (requiring a party to pay for costs of a depositions when his conduct, namely failing to appear for the first deposition, required another deposition); *Monsanto Co. v. Ralph*, No. 00-CV-135, 2001 WL 35817667, at *4 (E.D. Mo. Oct. 10, 2001) (reasoning that the court "can force parties to retake depositions, perhaps pay for the inconvenience to the other party[.]"). If, after conducting the additional depositions, Hurley believes that the documents sought in the motion to compel are still necessary, he can supplement his motion to compel. Accordingly, it is

ORDERED that the parties will depose Judith Penzler, Steve Ladig, Teresa Herrera, and Jody Anderson for the limited purpose of determining the basis for the increased payments to Hurley. Defendants will pay plaintiff's out-of-pocket expenses for these depositions.

Dated July 11, 2012.

BY THE COURT:

/s/ *Karen E. Schreier*

KAREN E. SCHREIER
CHIEF JUDGE