UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | | |
|---|---|---|
| WILLARD HURLEY, | ) | CIV. 10-4165-KES |
| | ) | |
|     Plaintiff, | ) | |
| | ) | |
| vs. | ) | ORDER |
| | ) | |
| STATE FARM MUTUAL | ) | |
| AUTOMOBILE INSURANCE | ) | |
| COMPANY and | ) | |
| STATE FARM FIRE AND CASUALTY | ) | |
| COMPANY, | ) | |
| | ) | |
|     Defendants. | ) | |

Plaintiff, Willard Hurley, alleges a bad faith claim against defendants, State Farm Mutual Automobile Insurance Company and State Farm Fire and Casualty Company (collectively State Farm). Hurley moved to compel discovery, which the court granted in part and denied in part. Docket 49. Because State Farm claimed that the attorney-client privilege protected some documents, the court conducted an in camera review of the allegedly privileged documents. After reviewing the documents, the court determined that further argument was necessary and held a hearing on July 9, 2012. Following the hearing, the court ordered that the parties depose four individuals for the limited purpose of determining the basis for State Farm's decision to increase insurance payments to Hurley. Docket 57. The parties submitted the transcripts of those depositions along with affidavits from the individuals

deposed to the court for in camera review. The parties also filed additional briefs to support their arguments.

## BACKGROUND

The pertinent facts to this order are as follows:

Hurley maintained auto coverage and umbrella coverage policies with State Farm. On October 21, 2007, Hurley was injured in an automobile accident as a result of another driver's actions. The other driver's personal liability insurance limits were insufficient to compensate Hurley. After State Farm declined to substitute its own draft of the other driver's settlement, Hurley accepted the limits of the other driver's policy and entered into a release with the driver.

Hurley then filed a claim with State Farm, which denied his claim. Hurley brought suit against State Farm for breach of contract to recover under the underinsured motorist (UIM) provisions of his policy. After about one year of litigation, State Farm made an unconditional payment of $340,000 to Hurley and later paid an additional $200,000 to resolve the case. Hurley then commenced this action alleging first-party bad faith refusal to pay an insurance claim.

## DISCUSSION

Detailed accounts of the law and facts relevant to Hurley's motion to compel were discussed in previous orders from this court. Dockets 49 & 57. A brief summary of those orders helps frame the current issue.

Hurley seeks information concerning State Farm's conduct that occurred after Hurley filed his UIM claim with State Farm to understand why State Farm paid zero dollars on Hurley's claim before litigation began, but then paid $340,000 about a year after litigation began, and then an additional $200,000 later. State Farm originally refused to provide the requested information but, after Hurley moved to compel, State Farm provided such information redacting the portions subject to the attorney-client privilege.

State Farm argued that the information sought is not relevant because it occurred after the breach of contract litigation commenced, and it does not relate to State Farm's initial denial of Hurley's claim. Relying on *Dakota, Minnesota & Eastern Railroad Corp. v. Acuity*, 771 N.W.2d 623 (S.D. 2009), this court concluded that evidence relating to State Farm's decision to dramatically increase the amount paid on Hurley's claim, even if the evidence stems from post-litigation conduct, is relevant and discoverable because a first-party bad faith claim focuses on whether an insurance company consciously engaged in wrongdoing during the processing or paying of policy benefits to its insured. Docket 57 at 3-5.

The court then addressed the issue of attorney-client privilege. After noting that South Dakota law applies to issues regarding attorney-client privilege, *see* Fed. R. Evid. 501, the court determined that the documents in question are protected by the attorney-client privilege because they were made for the purpose of rendering professional legal services to the client. Docket 57 at 5-6. A client, however, can waive the attorney-client privilege if, among other reasons, the client's actions fall under the advice-of-counsel exception to the attorney-client privilege. *Bertelsen v. Allstate Ins. Co.*, 796 N.W.2d 685, 701 (S.D. 2011).

In *Bertelsen*, the South Dakota Supreme Court referenced the test from *Hearn v. Rhay*, 68 F.R.D. 574 (E.D. Wash. 1975), for determining whether a client has waived the attorney-client privilege. *Id.* at 702. *Hearn* articulated a three-part analysis: (1) whether the assertion of the attorney-client privilege was the result of an affirmative act by the asserting party; (2) whether the asserting party, through the affirmative act, made the protected information relevant to the case; and (3) whether " 'application of the privilege would have denied the opposing party access to information vital to his defense.' " *Id.* (quoting *Hearn*, 68 F.R.D. at 581).

After determining that *Hearn* provides insufficient guidance on its own, the Supreme Court added additional considerations to the *Hearn* analysis. "First, the analysis . . . should begin with a presumption in favor of preserving

4

the privilege." *Id.* at 703. "Second, a client only waives the privilege by expressly or impliedly injecting his attorney's advice into the case." *Id.* Under this analysis, "[t]he key factor is reliance of the client upon the advice of his attorney." *Id.* (citation omitted). "Finally, a client only waives the privilege to the extent necessary to reveal the advice of counsel he placed at issue." *Id.* (citing *DM&E*, 771 N.W.2d at 638).

Following a detailed analysis, this court previously determined that the sole issue is whether State Farm, through its affirmative acts, made the privileged information relevant to the case by injecting its attorney's advice into the case. Docket 57 at 10. At that time, however, the court was unable to definitively conclude whether State Farm injected its attorney's advice into the case. Thus, the court ordered the parties to depose Judith Penzler, Steve Ladig, Teresa Herrera, and Jody Anderson for the limited purpose of determining the basis for the increased payments to Hurley. After the depositions, those four individuals were required to file affidavits, under seal with the court, detailing the substance, if any, of the attorney-client privileged information upon which the individuals relied. The court has reviewed the deposition transcripts, the four affidavits, and additional briefs  and can now determine whether State Farm injected its attorney's advice into the case.

State Farm argues that it did not waive its attorney-client privilege because it is not explicitly claiming the advice-of-counsel defense in response

5

to Hurley's bad faith claim. The law in South Dakota, however, only requires some affirmative act, not necessarily an express claim of the advice-of-counsel defense, to waive the attorney-client privilege. *Bertelsen*, 796 N.W.2d at 702 (citing *Hearn*, 68 F.R.D. at 581 and *State Farm Mut. Auto Ins. Co. v. Lee*, 13 P.3d 1169, 1173 (Ariz. 2000)). Representatives of State Farm testified that they relied, and in some instances quite heavily, on the advice of counsel in deciding to increase the amount paid on Hurley's claim. State Farm's defense–its justification for why it increased the amount paid to Hurley from zero dollars to $540,000–is based, in part, on factual representations that *explicitly* rely upon legal advice. *See Lee*, 13 P.3d at 1178 ("But where . . . an insurer makes factual representations which implicitly rely upon legal advice as justification for non-payment of claims, the insurer cannot shield itself from disclosure of the complete advice of counsel relevant to the handling of the claim."). Such factual representations are more than a mere assertion of good faith; they go to the heart of *proving* State Farm's good faith defense. Therefore, State Farm's assertion of the privilege was a result of its affirmative act.

      The second criterion of the *Hearn* test requires that State Farm, through its affirmative act, put the protected information at issue by making it relevant to the case. *Bertelsen*, 796 N.W.2d at 702 (citing *Hearn*, 68 F.R.D. at 581). Additionally, the South Dakota Supreme Court has held that South Dakota law requires the asserting party to inject its reliance upon the advice of

counsel into the litigation if the asserting party is to waive the privilege. *Id.* at 703. The deposition transcripts show that State Farm relied upon the advice of counsel when it increased the amount paid on Hurley's claim. Prenzler answered in the affirmative when asked whether she relied on advice of counsel in reaching her conclusions as to the valuation of Hurley's claim, characterizing her reliance as "heavy weighted." Docket 73-1 at 2. Ladig testified that his lost wage calculation "was probably heavily dependent upon defense counsel." Docket 73-2 at 2. Herrera answered in the affirmative when asked whether the advice of counsel played a role in the ultimate valuation decision that she reached. Docket 73-3 at 5. The deposition testimony of these three individuals illustrates the point that State Farm's own counsel made during oral argument: advice of counsel was "intertwined" with State Farm's decision to increase the valuation of Hurley's claim. Therefore, State Farm injected its attorney's advice into this case by relying, quite heavily, on the advice of counsel in deciding to increase the amount paid on Hurley's claim. *See Lee*, 13 P.3d at 1178-81 ("Having asserted that its actions were reasonable because of what it knew about the applicable law, State Farm has put in issue the information it obtained from counsel.").

    The third criterion of the *Hearn* test requires a situation in which application of the privilege would deny Hurley access to information vital to his claim or State Farm's defense. *Hearn*, 68 F.R.D. at 581. As the court

7

previously noted, Hurley is entitled to know the reasons why State Farm increased its payment because the question of whether State Farm had a reasonable basis to deny his claim is a necessary element in a first-party bad faith case. *See, e.g.*, *Brooks v. Milbank Ins. Co.*, 605 N.W.2d 173, 177 (S.D. 2000) (reasoning that under South Dakota law the elements of a first-party bad faith claim include "the absence of a reasonable basis for denial of the claim; and that the insurer knew there was not a reasonable basis to deny the claim or that the insurer acted in reckless disregard of the existence of a reasonable basis to deny the claim"). Therefore, Hurley has met the *Hearn* criteria as supplemented by *Bertelsen*, showing that State Farm impliedly waived its attorney-client privilege.

Even so, State Farm need not disclose all attorney-client communications related to the bad faith claim. A "client only waives the privilege to the extent necessary to reveal the advice of counsel he placed at issue." *Bertelsen*, 796 N.W.2d at 703. Here, State Farm waived the privilege to this narrow issue: the advice that State Farm's counsel provided that played a role in State Farm's decision to increase the payments on Hurley's claim. Because the affidavits created by Penzler, Ladig, Herrera, and Anderson are limited to the substance of the advice of counsel that they relied on in increasing the value of Hurley's claim, the affidavits will be disclosed to Hurley. If, after reviewing the affidavits, Hurley determines that further

8

discovery is necessary, then he should request such from the court.

Accordingly, it is

ORDERED that the affidavits signed by Penzler, Ladig, Herrera, and Anderson will be disclosed by defendants to Hurley by **February 11, 2013.**

Dated January 30, 2013.

BY THE COURT:

/s/ *Karen E. Schreier*
KAREN E. SCHREIER
UNITED STATES DISTRICT JUDGE